Lyon *v.* Valentine.

[KINGS GENERAL TERM, December 10, 1860. *Lott, Emott* and *Brown,* Justices.]

---

## LYON *vs.* VALENTINE,

Commissions are a customary mode of compensation to merchants, agents and factors who buy and sell property and merchandise for others and pay out and receive the price therefor ; and to that class of agents who deal in real property for other persons and neither pay out nor receive into their own hands the purchase money.

But they are not a proper measure of compensation for services which consist in nothing more than introducing one neighbor who desires to purchase, to another neighbor who desires to sell, a farm of land ; where the agent is not a broker, nor engaged in the business of buying and selling land, and is not employed as a broker or land agent, by his principal ; and where the negotiation is conducted and the sale and purchase effected, by the parties themselves,

APPEAL from a judgment entered at a special term, denying the defendant's motion for a new trial.

*John I. Clapp,* for the plaintiff.

*Robert S. Hart,* for the defendant.

*By the Court,* BROWN, J.    The plaintiff obtained a verdict for the sum of $830 damages, in this action, before Mr. Justice INGRAHAM, at the Westchester circuit, in Nov. 1858, upon, which he entered judgment, and to set aside which judgment this appeal is brought.    The action is upon contract, to recover compensation for services rendered in the sale of the defendant's farm in the town of Eastchester.    We shall be better able to determine whether any error has been committed, and injustice done to the defendant, if we ascertain, in the first place, the character and terms of the contract for the breach of which the plaintiff claims to recover.

The complaint alleges that in July, 1852, the defendant was the owner of a farm of 91 acres in the town of Eastchester, and agreed to and with the plaintiff, that if the plaintiff would bring or procure for the defendant a customer or person who would buy or purchase of the defendant such farm, the defendant would pay the plaintiff liberally therefor, and would pay him what his services were worth in procuring and bringing such customer or person to buy the farm.    It then avers performance of the contract by the plaintiff, and alleges that in November or December following he found and procured a person, one John Kayser, who did purchase the farm from the defendant, at the rate of $450 per acre, on the 5th day of February, 1853, and that afterwards, on the 5th of August thereafter, the defendant conveyed the farm to Kayser, and for which Kayser paid or agreed to pay, the defendant, $41,031, with the averment that his services were reasonably worth the sum of $1200, and which was justly due and owing from the defendant to the plaintiff.    The answer was a general denial.    The witness to prove the contract upon the trial was Jesse Lyon, the plaintiff, himself.    He testified he had different consultations with the defendant, touching the sale of the

Lyon *v.* Valentine.

farm. He could not give the words. The defendant told him "he had made up his mind to sell the farm; that if I would get him a customer he would pay me liberally, or pay me well." Again, on his cross-examination, the witness said, "Valentine said I have made up my mind to sell my farm. Get me a customer and I will pay you liberally, or pay you well. I asked him his price. He said I want $450 per acre. I said I thought it was a large price. He said if I got a good customer and positive sale I will do a little better. This is all I recollect." The defendant was examined as a witness, and denied having said anything of the kind. Caleb Morgan was also examined by the plaintiff, to prove the contract, and says, "I was present at a conversation between the parties in the beginning of October, 1852. I cannot recollect a word that was said. I can give my understanding of it. Kayser had been looking at my farm and would not buy it. We thought Valentine's farm would suit him. The purport of the conversation was that Lyon and Valentine were very particular friends, and Lyon was willing to assist Valentine, and Valentine was willing to make Lyon a compliment as a neighbor. The conversation was as friends and neighbors." There was no other proof on the subject. We see precisely what the plaintiff was to do in execution of this contract, and we also see there were some things he was not to do. He was not to sell the property himself. He was to enter into no contract or negotiation with another person for the sale of the farm. He had no authority or warrant to enter into any agreement for a sale which should bind or be obligatory upon the owner, or to speak upon the subject of the price, title or terms of payment. All this was the exclusive business of the owner himself, without the aid or interference of the plaintiff. If he found a person desirous to purchase the property, who was willing to meet the defendant and enter into a negotiation with him for the purchase, and a sale resulted therefrom, he fulfilled his part of the contract, and was entitled to compensation—compensation not for negotiating, not for selling,

but compensation for finding and introducing to the owner a person who ultimately became the purchaser. This was the contract the plaintiff executed. He and Kayser the purchaser were neighbors, living at Fordham. He says, in his testimony, he was also a near neighbor of Valentine's. He was not in any business, kept no office and used to be a farmer. He also says, " I took John C. Kayser to him to purchase the farm. I took him twice. The first time Valentine was not at home, and I showed Kayser the place. The second time I introduced Kayser, I told Valentine he had come with a view of purchasing his property." Again he says, " The sale was not consummated at the time I introduced Kayser, but was afterwards. There was no written agreement made when I was present. They commenced negotiations ; the sale was not then effected." John C. Kayser was also examined as a witness for the plaintiff, and said, " I went with the plaintiff to Valentine's house to meet him, and on that occasion was introduced by Lyon. I had a number of meetings with Valentine, at my office in New York. I was negotiating with Valentine for about three months. I bought the place at $450 per acre ; the whole purchase money amounted to between $41,000 and $42,000. There was no negotiation between Lyon and myself. Lyon and myself met as neighbors, and he mentioned this matter to me. The negotiation was protracted on account of differences as to payments." I have been thus particular to show from the evidence what the transaction really was, both in its inception and execution. It is obvious that the right of action, if it can be maintained at all, stands upon the most narrow foundations. The plaintiff is the only witness who affirms the existence of the contract, and the defendant in his testimony positively disaffirms it. Caleb Morgan regarded it in the light of an act of friendship and good will between two friends and neighbors. The jury, however, have found the fact in the plaintiff's favor ; and if he recovers compensation he must recover upon the contract alleged and proved, and for the

Lyon *v.* Valentine.

services rendered, and not upon a contract unproved and for services not rendered. He was not employed as a land agent or broker to sell the property; he did not perform the services usually rendered by this class of agents; and is not entitled to recover their measure of compensation.

The error committed, and the injustice done to the defendant, upon the trial, consisted in recognizing the plaintiff's right to recover commissions upon the price of the property sold as a measure of compensation. Two witnesses, John Stephens and John L. Burnett, were called and sworn for the plaintiff, upon the trial. They testified they were brokers, or land agents, and their business was selling real estate on commission, in Westchester county where they resided. One of them, Stephens, testified that those who receive commissions are land agents. They advertise for purchasers and have offices. These witnesses were both asked what were the usual commissions of land agents, in that neighborhood; that is, their usual commissions upon sales of lands made by them. The question was in both instances objected to by the defendant's counsel, upon the ground that commissions, under the proof in this action, was not the true measure of the plaintiff's compensation. The court overruled the objection and the defendant excepted. One of the witnesses, in answer to the question, replied, " The commissions on sales amount from one to five per cent on small lots, and from one to three per cent, according to the amount of the purchase money, on farms. I suppose the commissions on the sale of a farm for $41,000 or $42,000 would be one per cent at least. I suppose one per cent for a farm of that size would be enough." The other witness, in answer, said, " I am allowed from two and a half to five per cent on village lots; on farms I have known parties to have from one to two and a half per cent. It depends on the amount." The questions put to the witnesses by the plaintiff, and the objections made by the defendant, brought the nature of the plaintiff's employment and the measure of his compensation to the notice of the court for

adjudication. And when it determined that the inquiries were relevant and pertinent to the issue, it was saying to the jury, in substance, that they were to regard the plaintiff in the light of a land agent or broker employed to sell the property and entitled to the usual commissions upon the purchase money therefor. Because, if this was not the purport of the decision, and the court did not design it should be so understood, proof of the usual commissions paid to land agents and brokers upon sales of real property was irrelevant and foreign to the issue, and should have been rejected on that account. The effect of the evidence upon the mind of the jury, and the deference they paid to the expression of the judge's opinion, is apparent from the verdict; for they awarded the plaintiff $830, being a little less than two per cent upon the purchase money of the farm, for services which consisted in nothing more than introducing one neighbor who desired to purchase, to another neighbor who desired to sell, a farm of land. Commissions are a just and appropriate measure of compensation to public officers who receive and disburse the public money, and so they are to trustees who execute private trusts and receive and pay out the trust funds. They are also a customary mode of compensation to merchants, agents and factors, who buy and sell property and merchandise for others, and pay out and receive the price therefor, and to that class of agents who deal in real property for other persons, and for obvious reasons neither pay out nor receive into their own hands the purchase money. All these employments require labor and skill, knowledge, experience and tact of a peculiar kind, and in some of them hazards and responsibilities are unavoidably incurred. Compensation in the form of commissions, which is graduated with reference to the qualities required, as well as the risks incurred, is apt and appropriate in every sense. But to award commissions, or compensation in the nature of commissions, for a service like that under consideration, which involved no expenditure, required little labor, no skill, no knowledge or experience, and when the

employee incurred no sort of responsibility, would be repugnant to the plainest dictates of justice and good sense. The authorities cited on the points were cases where the employment was to negotiate and sell. They are not analogous to that under consideration.

The judgment should be reversed and a new trial awarded, with costs to abide the event.

